[No. 5,787.]

## RIDER ET AL. v. EDGAR.

ORAL CHARGE—INSTRUCTIONS—EXCEPTIONS.—Exceptions to the *oral charge* of the Court below must be specific, and point to the particular portions of the charge claimed to be objectionable; and this rule is equally applicable where it is claimed that all the propositions laid down in the charge are objectionable.

TAKING—CONVERSION—TRESPASS—TROVER.—To maintain *trover* or *trespass de bonis asportatis,* evidence of an actual forcible dispossession of the plaintiff is not necessary. Any unlawful interference with the property, or exercise of dominion over it, by which the owner is damnified, is sufficient to maintain either action. *Held,* accordingly, in an action by a mortgagee of personal property against a sheriff, for taking the same under attachments against the mortgagor, that a levy upon a part of the property in the possession of the mortgagor, and the appointment of a keeper, was a *taking,* although the property was not moved or otherwise disturbed, and though it was released before any demand from the plaintiff.

ID.—NEW TRIAL—STATEMENT—SPECIFICATION.—*Held,* further, in the same case, that an objection to the verdict, that it included the value of the property thus released, could not be considered under the specification (of insufficiency of evidence) that the said property had never been taken by the defendant.

CHATTEL MORTGAGE—GROWING CROP.—A chattel mortgage upon a growing crop, as against an attaching creditor, continues to be a lien upon the crop, in the possession of the mortgagor, after severance and removal from the land.

APPEAL from a judgment for plaintiffs, and from an order denying a new trial, in the Twelfth District Court, City and County of San Francisco. DAINGERFIELD, J.

Action for damages for the taking of certain sacks of oats. The plaintiffs claimed as mortgagees of the property in question, under a chattel mortgage of the growing crop, which authorized them to take possession at any time, and to harvest and sell the same. The defendant was Sheriff of San Mateo County, and justified under writs of attachment in his hands against the mortgagors. The taking was admitted; but the answer avers, that, prior to any demand by plaintiffs, 450 sacks were released.

It appeared, from the plaintiffs' evidence, that the oats were threshed by the mortgagors, placed in sacks marked with their initials, and (with the exception of 450 sacks) shipped by them to the landing, some miles distant from their place. But the plaintiffs furnished the sacks and advanced to the mortgagors part of the money for the expenses, and had an employé present to report progress, and who assisted in the work.

There was a motion for nonsuit, on the ground that the property was levied upon in the possession of the mortgagors after it had been harvested and carted away. And the refusal of the Court to grant this motion, is one of the errors specified in the statement.

From the defendant's evidence it appeared, that, at the time of the levy, the grain—except 450 sacks—had been stored at the landing in the name of the mortgagors, and subject to their order. But one of the mortgagors testified that he proposed, when he got ready, to ship it to the mortgagees, the plaintiffs. The 450 sacks were stored in a house on the mortgagor's premises. The Sheriff levied on these without moving them, and appointed a keeper; but afterward, and before demand from the plaintiffs, released the levy.

The defendant asked the Court for several instructions, among which was the following :

" 1st. A chattel mortgage of a growing crop of grain entitles

the mortgagee to take possession of said crop, harvest it, and retain possession of the grain thus produced; but if the mortgagee neglect to take possession of said crop at the time of its maturity, or at the time it is harvested, or within a reasonable time thereafter, but allows the mortgagor to harvest and retain such possession of the grain, the Court instructs you that the lien of the mortgage ceases as against an attaching creditor of the mortgagor, who levies his attachment upon such grain while it is so in possession of the mortgagor."

This instruction was refused; and the ruling of the Court was excepted to, and specified as error in the statement.

The Court then, of its own motion, after charging the jury that they were judges of the evidence, and that it was admitted that the property in question had been attached by the defendant, instructed them to the effect, that a chattel mortgage holds the property mortgaged, not only during the growing of a crop, but also after it is severed, until released or abandoned by the mortgagees, or until barred by the Statute of Limitations.

The other facts are stated in the opinion.

*F. E. Spencer*, and *H. Kincaid*, for Appellants.

The provision in the Civil Code (§ 2955) is a substantial re-enactment of the Act of April 9th, 1857, § 17, (Stat. 1856, p. 87) and is to be construed as a continuance of that law. Under the latter act it was held, that the mortgagee lost his lien by leaving the grain cut ten days in the field, without attempting to take possession. (*Goodyear* v. *Williston*, 42 Cal. 16.)

The mortgage of a growing crop will not be construed to extend to grain in a warehouse, any more than the permission to mortgage furniture in hotels will be construed to include furniture in saloons. (*Gasner* v. *Patterson*, 23 Cal. 299.) The mortgage attaches to the growing crop as such, and by reason of its permanent character (*Arques* v. *Wasson*, 51 Cal. 622); and it would be a violation of the spirit as well as the letter of the law, to convert it into a roving commission to take a different kind of property, at any distance of time and place from where the mortgaged property was. If defendant is liable at

all, it is for the value of the 1,855 sacks actually taken and sold, and possibly nominal damages for seizing the 450 sacks.

*A. M. Crane,* for Respondents.

The mortgage was recorded in the county where the grain was, and was notice to all the world. (Code Civ. Proc. § 2963; *James* v. *Morey,* 2 Cowen, 246.) Besides, defendant had actual notice that this very grain, in the sacks seized by him, was the same grain covered by the mortgage at and before the seizure. The possession of the mortgagors was consistent with the mortgage and with the law. The general property remained in the mortgagors, and was subject to legal process against them, on condition that the officer must first pay or tender the sum due on the mortgage. There was no evidence of any abandonment by the mortgagees, and the Court correctly instructed the jury to that effect. There is no evidence that the 450 sacks were ever released.

Department No. 1, by the COURT (from the Bench):

As the case is presented in the *transcript,* the questions argued by appellant cannot be considered.

It is the established rule that exceptions to the *oral charge* of the Court below must be specific, and point to the particular portions of the charge claimed to be objectionable. (*Sill* v. *Reese,* 47 Cal. 295, and cases there cited.) The rule is equally applicable where, as in this case, counsel shall subsequently claim that all the propositions laid down in the charge are objectionable. This rule is one of practice, which must apply without exception. It follows, that we cannot inquire whether the Court below erred in respect to the whole or any portion of the oral charge.

Section 648 of the Code of Civil Procedure provides, that when the motion for a new trial is based upon the ground of insufficiency of the evidence to justify the verdict, the *bill of exceptions* must specify the particulars in which the evidence is alleged to be insufficient. And § 659 contains a like provision with reference to *statements of the case.* The only specifica-

tions appearing in this transcript which can be supposed to bear upon the error of the jury in rendering the verdict for the value of the 450 sacks of grain, said to have been *released* by the Sheriff, are the *fifteenth* and *sixteenth*. But neither of these call attention to the circumstance of the *release* by the Sheriff; but, on the contrary, ignore the release entirely, and are based upon the statement that the 450 sacks were never taken by the Sheriff at all.

The Sheriff *levied* on the grain, and put a keeper in charge of it; for he says in his testimony, (Trans., fol. 157) "I sent an order to the keeper, and released them," etc. The levy and appointment of a keeper, who must be presumed to have had control of the property, was a *taking*. The law is declared in *Phillips* v. *Brown*, 8 Wend. 611, where the Supreme Court of New York said: "To maintain *trover or trespass, de bonis asportatis,* evidence of an actual forcible dispossession of the plaintiff is not necessary; any unlawful interference with the property, or exercise of dominion over it, by which the owner is damnified, is sufficient to maintain either action." (And see cases there cited.)

There was evidence, therefore, that the 450 sacks of grain were taken and converted. It would seem that they were subsequently *released,* but there is no specification in substance or effect that the jury disregarded the evidence which related to the release.

Judgment and order affirmed.