[Civ. No. 152. Fifth Dist. Jan. 24, 1963.]

L. E. SERVICE, Plaintiff and Appellant, v. OTTAVIO TROMBETTA et al., Defendants and Respondents.

F. M. Brack and David G. Dunford for Plaintiff and Appellant.

Cleveland J. Stockton, Thomas A. Lacey, C. Ray Robinson and Helen Kelly Munter for Defendants and Respondents.

CONLEY, P. J.—The plaintiff, L. E. Service, appeals from a judgment denying recovery in an action for conversion. There is little or no conflict in the evidence; the court's decision, therefore, is based on its view of the law as applicable to established facts.

On May 23, 1956, L. E. Service secured a writ of execution in an action entitled "*L. E. Service* v. *Joe D. Trombetta et al.*," in which he claimed a balance due on a judgment in the sum of $4,167.33. The sheriff levied upon, and took into possession, a certain rebuilt Peterbilt truck. On August 20, 1956, the defendants in the present action, Ottavio Trombetta, Miles & Son and Bank of America National Trust and Savings Association, served a third party claim upon the sheriff, stating over the signatures of each of the claimants, ". . . that the rebuilt White-Peterbilt tractor-type truck . . . belongs to us; . . . We demand of you the immediate release and surrender of the said property." The trial judge correctly said: "It would appear . . . that the *joint* third party claim caused the release of the truck and that if Ottavio Trombetta is liable, so are the other two defendants."

The plaintiff, L. E. Service, did not see fit to post a bond with

the sheriff, and the truck was released on August 29, 1956. Mr. Service, however, demanded a hearing as to the ownership of the truck pursuant to the provisions of section 689 of the Code of Civil Procedure, and on January 22, 1957, the trial court entered a judgment holding that title to the truck at the time of the levy of the writ of execution was in Joe D. Trombetta, one of the judgment debtors, and that none of the third party claimants had any interest in the truck superior to the title of the judgment debtor or to the execution lien of the judgment creditor, L. E. Service. The judgment, however, was appealed by Ottavio Trombetta on March 4, 1957, and a final judgment was not secured until November 27, 1957, when the remittitur from the Third District Court of Appeal was filed in the superior court.

In the meantime, on December 21, 1956, Joe D. Trombetta was adjudicated a bankrupt, and one Norman Mulholland was appointed trustee in bankruptcy.

On April 4, 1957, Mr. Service had obtained a new writ of execution, and pursuant thereto the Sheriff of Stanislaus County sold certain equipment of Joe Trombetta for the sum of $282.80, which was credited on the judgment. On October 11, 1957, the trustee in bankruptcy of Joe Trombetta had sold the truck and other property of the bankrupt for the sum of $4,000, and the proceeds were used in partial liquidation of the bankrupt's debts to creditors other than Mr. Service, who did not file a claim.

In the present action, the complaint recites the facts above referred to and alleges that at the time of the release of the execution levy the truck was reasonably worth in excess of $4,307.68, that being the amount of principal and interest due on the judgment as of December 4, 1957. The complaint further avers that the truck is no longer available for execution and that the judgment is otherwise uncollectible. The pleading recites that the plaintiff is damaged in the sum of $4,307.68, besides interest and costs. The findings of fact establish that after deducting all proper credits, the balance due plaintiff on April 4, 1957, on the prior judgment against Joe Trombetta was $4,083.62.

The court in the present action found that at the time of the filing of the third party claim and the release of the truck on August 29, 1956, its fair market value was $4,500; that the plaintiff acquired an equitable lien on said truck by virtue of the proceedings taken under section 689 of the

316

Code of Civil Procedure, which was available to plaintiff as against the trustee in bankruptcy but that plaintiff took no steps to enforce the lien or protect his rights; that the failure of plaintiff to assert his lien and priority and his acquiescence in the disposition and sale of the truck resulted in a loss "which a proper degree of prudence on his part would have averted." The judgment was for the defendants. A motion for a new trial was denied, and the appeal followed.

When the levy of a writ of execution on property owned by the judgment debtor is defeated through the filing of a third party claim which is false, a conversion of the property upon which execution has been levied takes place, independently of whether the third party claimants are acting in good faith. In *McCaffey Canning Co., Inc.* v. *Bank of America,* 109 Cal.App. 415, 424 [294 P. 45], it is stated:

"Any wrongful assumption of authority over chattels, inconsistent with another's right of possession or subversive of his vested interest therein, amounts to conversion. . . . An unjustified claim of title may amount to conversion. . . ." (See also *Gruber* v. *Pacific States Sav. & Loan Co.,* 13 Cal.2d 144, 148-149 [88 P.2d 137] ; *Arena* v. *Bank of Italy,* 194 Cal. 195 [228 P. 441] ; *Kessinger* v. *Organic Fertilizers, Inc.,* 151 Cal.App.2d 741, 751-754 [312 P.2d 345] ; *Taylor* v. *S. & M. Lamp Co.,* 190 Cal.App.2d 700, 712 [12 Cal.Rptr. 323] ; *Pilch* v. *Milikin,* 200 Cal.App.2d 212, 224 [19 Cal.Rptr. 334] ; *Kee* v. *Becker,* 54 Cal.App.2d 466, 471-472 [129 P.2d 159] ; 48 Cal. Jur.2d, Trover and Conversion, § 3, p. 537.)

The measure of damages is the value of the property at the time and place of the conversion (*McCaffey Canning Co., Inc.* v. *Bank of America, supra,* 109 Cal.App. 415, 424; *Everfresh, Inc.* v. *Goodman,* 131 Cal.App.2d 818 [281 P.2d 560]), limited, however, in the case of the loss of a lien, to the amount of the lien together with an allowance for lost time and expense. (Civ. Code, § 3338.)

The contention made by respondents that the rule in the *McCaffey* case has been abrogated through the amendment of the code section (Code Civ. Proc., § 689) since the decision of that case by permitting a proceeding to determine title cannot be approved in view of the authorities cited above, and the fact that while such action is denominated by respondents as "an immediate hearing to determine title to the property in question," it is scarcely "immediate" in

practice, as is demonstrated by the long delay in the present instance in determining title.

The judgment must stand or fall on the court's determination that plaintiff's loss was due to his own conduct. Did Mr. Service owe a legal duty to follow the truck into the bankruptcy court or to take additional means to subject it to execution in his own favor?

Contrary to the contention of the respondents, the record does not present a situation in which the lower court has determined the existence of facts on conflicting evidence with the result that the findings are binding upon an appellate court. In the memorandum opinion, which may be consulted to determine the rationale of the court's decision, it is stated: "The facts are not in dispute, with perhaps the exception of the value of the truck in question." The findings, therefore, to the effect that plaintiff has himself to blame for his loss are in the nature of conclusions of law. It is also clear that the plaintiff did not pursue the truck into the bankruptcy court, and that he did nothing otherwise in an attempt to subject it to execution after the release by the sheriff.

The principle set forth in *Lackenbach* v. *Finn,* 26 Cal.App. 482, 485 [147 P. 471], which has never been questioned in any later California case, should, in itself, be decisive of this issue. In that case the sheriff had levied an attachment and an execution on certain mortgaged property without paying the amounts due on the mortgage. Thereafter, the corporate mortgagor went through bankruptcy. A judgment against the sheriff was upheld, the court saying:

"We cannot agree with the defendant that the plaintiff was bound to follow the property into the bankruptcy proceedings for the purpose of proving her claim and minimizing the damages, or for any other purpose. The mortgage being valid, the levy of the writs and the taking possession of the property without having complied with the provisions of sections 2968 and 2969 of the Civil Code constituted a conversion, and vested the plaintiff at once with a right of action for damages as fixed by section 3336 of the Civil Code, although of course the recovery must be limited to the amount secured by the mortgage (*Rider* v. *Edgar,* 54 Cal. 127; *Irwin* v. *McDowell,* 91 Cal. 119 [27 P. 601].)

"The defendant persisted in holding the property under the writs mentioned, knowing of the existence of the chattel

mortgage and the circumstances under which it was executed. The plaintiff was not required under the law in this state to go to the trouble and incur the expense and suffer the delay of following the property into the federal courts." (See also 14 Cal.Jur.2d, Damages, § 115, p. 737 et seq.)

The trial court adopted the theory advanced by the respondents that under *Gilbank* v. *Benton,* 9 Cal.App.2d 517 [50 P.2d 815], Mr. Service had an equitable lien on the truck, and that he should have done something to recover the amounts due by reason thereof; furthermore, in view of the fact that Service at one time had the truck on his own property under an agreement for storage with the trustee in bankruptcy and that he even made a bid to purchase it at the trustee's sale, he could not recover his damages because ". . . a proper degree of prudence on his part would have averted" them. (Civ. Code, § 3336.) The trial court did concede in its memorandum that because the judgment that Joe D. Trombetta was the owner of the truck was under appeal during all of this time and until after the sale of the truck by the bankruptcy court, the sheriff could not have levied upon or sold the truck. (*Fulton* v. *Webb,* 9 Cal.2d 726 [72 P.2d 744].)

In *Gilbank* v. *Benton, supra,* 9 Cal.App.2d 517, defendant had obtained a judgment and secured a writ of execution; the sheriff levied upon property of the judgment debtor which was mostly incapable of manual delivery; however, a keeper was placed in charge. When one Wheeler filed his third party claim, the defendant did not post an undertaking, and the sheriff withdrew the keeper; on the same day the defendant filed a petition for an order to determine title under the provisions of section 689 of the Code of Civil Procedure. After the hearing, the court held that the judgment debtor was in fact the owner of the property and at the sheriff's sale the defendant bid in the property. The debtor company filed a voluntary petition in bankruptcy, and the action was commenced by the trustee in bankruptcy to recover the property on the theory that defendant had no lien senior to the rights of other creditors. The trial court rendered judgment in plaintiff's favor for the return of the chattels or their value. The District Court of Appeal reversed, observing that most of the property was incapable of manual delivery and hence did not need a keeper, that the levy was properly made and that as it occurred more than four months prior to the filing of the petition in bank-

ruptcy, the levying creditor was entitled to the property. In the course of the opinion, the court suggested that proceedings under section 689 of the Code of Civil Procedure were in the nature of a creditor's bill and that that section was *in pari materia* with section 720 of the Code of Civil Procedure.

Appellant urges that the only point necessarily decided in *Gilbank* was that a valid unreleased levy had been made more than four months prior to adjudication of bankruptcy, and consequently that the remaining language of the opinion is dictum, which is in error for two reasons: (1) that sections 689 and 720 of the Code of Civil Procedure are not *in pari materia,* as is held in *Rauer's Law & Collection Co.* v. *Higgins,* 95 Cal.App.2d 483, 485 [213 P.2d 45]: "Appellant's insistence that title cannot be tried under Code of Civil Procedure, section 689, unless the third party claimant consents is based on the erroneous assumption that this section is *in pari materia* with Code of Civil Procedure, sections 720-721. The proceedings are entirely distinct . . ."; (2) that section 689 of the Code of Civil Procedure provided at the time of the decision in 1935 that upon failure of the judgment creditor to give an undertaking the levying officer "must release the property," and that this language was ambiguous; it might be construed, as the court apparently did in the *Gilbank* case, as referring merely to physical release and not to the loss of the lien created by levy. Appellant argues that since that time section 689 has been amended to make clear that not only the property, but the levy, is released if no bond is posted after the filing of a third party claim in that chapter 422 (§ 1, p. 1276) of the Statutes of 1957 inserted the words "and the levy" after "must release the property" in the first paragraph as well as in other places in the section. (See note 10 under legislative history of section 689 in the annotated edition of Deering's Code of Civil Procedure, p. 334.)

It appears to us that the Legislature intended to clarify the nature of the release so effected, and that there can no longer be any question that failure to post the required undertaking forfeits not only the sheriff's possession of the property but the lien of the levy. This conclusion is fortified by section 3057 of the Civil Code which provides that an officer levying execution upon personal property acquires a lien "dependent on possession"; it would

follow that the lien of an execution is lost when the sheriff relinquishes physical possession of the personal property; the amendment of section 689 subsequent to the *Gilbank* decision (Stats. 1935, ch. 722, § 15, pp. 1958-1960), which is detailed in note 7 of Deering's legislative history of the section at pages 332-333, spells out the power of the sheriff to retake the property after determination of title in favor of the execution creditor and makes it clear that the sheriff must then have the old writ, if it has not been returned, or a new writ in order to repossess the property. At the time of the decision in the *Gilbank* case the statute was silent as to those matters, and the court then apparently construed section 689 as not invalidating the lien of the original levy upon release of the property; such an interpretation is no longer possible.

 The evidence does not justify the conclusion of the trial court that plaintiff's loss was due to his own fault. At the time of the sale by the bankruptcy court the remittitur on the appeal taken by Ottavio Trombetta had not been filed in the lower court. There was then no final judgment that Joe Trombetta was the owner of the truck at the time of the levy. The truck was in the possession, legally, of the trustee in bankruptcy, even though during part of the time it was actually stored on the premises of the plaintiff. The record shows that the plaintiff was not notified or advised by anyone that he had any right to move against the truck, and surely he had no duty to invite criminal prosecution by interfering with the possession of the bankruptcy court.

 While it is the burden of anyone having a claim against another to do everything reasonably proper to mitigate damages, this principle has never been successfully invoked to require a complex series of doubtful acts and expenditures on the part of a creditor in order possibly to cut down the amount of damages which may be owed to him through the wrongful act of another. The obligation never requires the plaintiff to do what is unreasonable or impracticable. (*Valencia* v. *Shell Oil Co.,* 23 Cal.2d 840, 846 [147 P.2d 558]; *Guerrieri* v. *Severini,* 51 Cal.2d 12, 23 [330 P.2d 635]; *Crag Lumber Co.* v. *Crofoot,* 144 Cal.App.2d 755, 780 [301 P.2d 952]; *Gagne* v. *Bertran,* 43 Cal.2d 481, 491 [275 P.2d 15].) It would be unreasonable to require Mr. Service, in the circumstances developed by the record, to

carry an effort to recover the truck into the bankruptcy court. The tort was finally committed when the defendants wrongfully secured the release of property, the value of which would have completely satisfied the judgment.

Accordingly, the judgment is reversed with directions to the trial court to amend its findings and judgment in accordance with the views expressed herein and to award to the appellant the sum of $4,083.62 with interest thereon at the legal rate from April 4, 1957, together with his costs of action.

Stone, J., concurred.

Brown, J., being disqualified, did not participate.

A petition for a rehearing was denied February 21, 1963. Brown, J., being disqualified, did not participate therein. The petition of respondent Ottavio Trombetta for a hearing by the Supreme Court was denied March 20, 1963.