[Civ. No. 31879. Second Dist., Div. Five. Aug. 30, 1968.]

GENE GLASBAND, Plaintiff and Respondent, v. SUN STATE MUSIC DISTRIBUTORS, INC., Defendant and Appellant.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Ellis J. Horvitz for Defendant and Appellant.

Corinblit & Shapero and Martin M. Shapero for Plaintiff and Respondent.

KAUS, P. J.—Defendant Sun State Music Distributors, Inc. ("Sun State") appeals from a summary judgment awarding plaintiff damages in the sum of $14,428.59.

One Cherubin owed plaintiff about $16,500 on a judgment which plaintiff had obtained against Cherubin. A writ of execution had issued on that judgment and on October 15, 1965, plaintiff caused the writ to be levied on the furniture, fixtures, equipment and stock in trade of Cherubin.[1] Defendant Sun State, on November 16, filed two third party claims, claiming that it was the owner of the furniture, fixtures, equipment, stock in trade and of 70 percent of the proceeds of the stock in trade, having allegedly placed it with Cherubin on consignment. Plaintiff was unable to bond against defendant's claims and the property was therefore released to Cherubin. On November 29, 1965, there was a hearing on the validity of defendant's third party claims. It was determined that the claims were invalid. The judgment on the third party claim was entered December 1, 1965. On December 9 Cherubin filed a petition for bankruptcy in the United States District Court. The assets on which plaintiff had levied were sufficient to satisfy the balance of the judgment he held against Cherubin, being of the value of $104,000, but by the time the receiver was appointed they had been dissipated "so as to be of little or no value."

Defendant filed an answer in which it admitted the existence of the judgment against Cherubin, the filing of the third party claims, the judgment adverse to it, Cherubin's bankruptcy, and the value of the property levied on.

Defendant also attempted to plead the following by way of an affirmative defense: At the time of the levy on October 15,

---

[1] One of the declarations filed by defendant in opposition to the motion for summary judgment claims that on November 8 the marshal was instructed by plaintiff to release all furniture, fixtures and equipment from the control of the keeper who had been installed at Cherubin's place of business.

1965, and for a long time before then Cherubin had been "hopelessly insolvent and bankrupt." This was known to plaintiff when he caused the levy to be made. By the levy plaintiff had attempted "to obtain a preferential payment of an antecedent indebtedness to the detriment of, and as against, each and all of the other general creditors" of Cherubin. Sun State filed its third party claims believing in good faith that it was the owner of the inventory. Cherubin's bankruptcy petition was filed within four months of the date of plaintiff's levy, which was therefore voidable [sic]. The receiver appointed by the bankruptcy court initiated formal proceedings to have the lien declared void and it was so adjudicated by an order of the referee dated February 23, 1966.[2]

Plaintiff demurred to the affirmative defense. The demurrer was sustained without leave to amend. The record clearly shows that the court's theory was that once the third party claims later found to be invalid had been filed, Sun State had converted the property claimed (*Service* v. *Trombetta,* 212 Cal.App.2d 313, 316 [28 Cal.Rptr. 68]) and that later events could not undo the tort.[3] Plaintiff then filed his motion for summary judgment. In view of the admissions in the pleading and the court's expressed opinion that Cherubin's bankruptcy did not affect the conversion, the declaration in support of the motion consisted solely of a computation of the sum still owing on the judgment against Cherubin.

In opposition to the motion defendant filed two declarations. Apart from matter immaterial to this appeal, the

---

[2]Certified copies of the referee's findings and order were attached to the answer. They show that plaintiff appeared at the hearing which resulted in the order. There is a specific finding that Cherubin was insolvent at the time of the levy.

[3]The minute order sustaining plaintiff's demurrer to defendant's first attempt to plead the effect of the bankruptcy reads as follows: "Demurrer sustained. The first affirmative defense set out in the answer does not constitute a defense for the reason that it attempts to set up the contractual rule of excuse by condition subsequent. The principal [sic] of 'condition subsequent' does not exist in tort law. Here the tort of conversion occurred at the time the third party claim was allegedly wrongfully filed. Subsequent bankruptcy proceedings filed by the debtor do not affect the wrongfullness [sic] of the third party's acts. That is a separate tort. *Service* v. *Trombetta,* 212 C.A.2d 313." The minute order which sustained plaintiff's demurrer without leave to amend merely refers to *Service* v. *Trombetta, supra.*

declarations again set forth Cherubin's bankruptcy and the order of the referee in the bankruptcy proceeding.[4]

At the argument on the motion for summary judgment it evidently appeared that the court felt that there was a triable issue with respect to certain costs claimed by plaintiff, for plaintiff then filed a waiver of the costs and the same day the summary judgment was filed.

 In essence defendant's position, which we think has obvious merit, is this: had there been no third party claims, it is at least a triable issue how much benefit plaintiff would have derived from the levy. Both by the abortive affirmative defense and by its declarations in opposition to the motion for summary judgment, defendant attempted to point to the undeniable fact that the bankruptcy court had found, after a hearing in which plaintiff was represented by counsel, that the levy had been made at a time when Cherubin was insolvent and that the lien obtained by the levy of execution was null and void.[5]

Section 67 (a) (1) of the Bankruptcy Act (11 U.S.C. § 107 (a) (1)) provides as follows: "Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this title: *Provided, however,* That if such person is not finally adjudged a bankrupt in any proceeding under this title and if no arrangement or

---

[4] ". . . ORDERED, ADJUDGED AND DECREED that the liens obtained by the levies of execution made by Gene Glassband on the judgment obtained by Gene Glassband in the Los Angeles Superior Court case number 866084, and levied upon the monies or property in the hands of the Marshal of the City of Beverly Hills or Lesley R. Keays, Marshal of the Municipal Court of the County of Los Angeles are null and void; and it is

"ORDERED, ADJUDGED AND DECREED that the Marshal of the City of of Beverly Hills and Lesley R. Keays, Marshal of the Municipal Court of the County of Los Angeles, shall turn over to James A. A. Smith, Receiver or Trustee herein, any and all monies or other property in their possession as a result of levies made on behalf of the Plaintiff in that certain Los Angeles Superior Court action entitled Glassband v. Cherubin, bearing case number 866084."

[5] Our record is not very clear on the point, but the apparent reason why the receiver in bankruptcy made an application to have the execution declared void although the third party claims had caused the release of the inventory, is that there were other assets of Cherubin to which the levy still attached.

plan is proposed and confirmed, such lien shall be deemed reinstated with the same effect as if it had not been nullified and voided.''

What would have happened had the third party claims never been filed is, of course, problematical and presents a triable issue. The trial court thought it was immaterial since the conversion was complete when the third party claims were filed. We disagree. ▇ Whenever a lien subject to the provisions of 67 (a) (1) is obtained it has a built-in infirmity, namely that it may be set aside if, within four months, a petition initiating bankruptcy is filed. ▇ The filing of the third party claims cannot make perfect that which is imperfect. Formal legal reasoning about the asserted non-existence of conditions subsequent in tort law ignores the realities of the situation. Nor do we believe that section 3336 of the Civil Code[6] compels a different view. It merely states a presumption.

Throughout this litigation plaintiff has relied almost entirely on *Service* v. *Trombetta*, 212 Cal.App.2d 313 [28 Cal.Rptr. 68]. There the facts were as follows: Service, a judgment creditor of *Joe D.* Trombetta levied on a truck. *Ottavio* Trombetta, Miles & Son and the Bank of America then served a third party claim on the sheriff, which caused the truck to be released. There was a hearing on the third party claim and a judgment declaring Joe D. to be the owner of the truck. Joe D. was then adjudicated a bankrupt. The truck was later sold by the trustee in bankruptcy and the proceeds used for the benefit of the bankrupt's creditors. Service did not file a claim in the bankruptcy proceedings, but filed an action like the one at bar. The court found that the truck had a value in excess of the amount Joe D. owed on the judgment. Judgment went against plaintiff, however, because the court found that in spite of the release of the truck after the filing of the third party claim, Service retained an equitable lien on the truck which he could have asserted in the bankruptcy court against the general creditors.

The Court of Appeals reversed. It held that the filing of the

---

[6]Section 3336. ''. . . The detriment caused by the wrongful conversion of personal property is presumed to be: First—the value of the property at the time of the conversion, with interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; . . .''

false third party claim was a conversion in spite of the claimants' good faith, that the measure of damages was the value of the property at the time and place of the conversion and that Service was not bound to attempt to mitigate damages by proceedings in the bankruptcy court.

We do not see the relevance of *Service* v. *Trombetta, supra,* to the case at bar. Sun State's position is not that Glasband's failure to start some unspecified proceeding in the bankruptcy court destroyed its cause of action or decreased the damages. It would be futile to make any such point, for as we know plaintiff's lien was wiped out by proceedings in the bankruptcy court initiated by the receiver and just what other proceedings plaintiff should have started is nowhere pointed out.[7]

Defendant's point is quite different and in no way amounts to an argument directed to any supposed obligation to mitigate damages. It simply points to the existence of the bankruptcy and claims that it created a triable issue of fact concerning the amount of damage—if any—suffered by plaintiff as a result of the release of the levy following the filing of the claims. As we have already said that point, not involved and certainly not discussed in *Service* v. *Trombetta, supra,* is well taken.

At the time of the oral argument in this matter both counsel stipulated that it would be appropriate for this court to take judicial notice of the Cherubin bankruptcy file. We then asked counsel for plaintiff whether an inspection of that file would reveal anything destructive of defendant's argument and invited further briefing. Counsel for plaintiff has furnished us with certified copies of certain documents coupled with further arguments. There is nothing in any of the documents submitted which persuades us that this case should not be tried on its merits.

Plaintiff claims that Cherubin and defendant conspired to have fraudulent third party claims filed ''which gave him the protective umbrella required to hide the assets.'' While this may very well be true, there is not a shred of evidence to

---

[7] In *Service* v. *Trombetta, supra,* the execution was levied on May 23, 1956. Joe D. Trombetta was adjudicated a bankrupt on December 21, 1956. The report does not say when the petition to have him so adjudicated was filed. We therefore cannot know for sure whether the levy preceded the petition by more than four months. It is certain, however, that the question of section 67(a)(1) of the Bankruptcy Act (11 U.S.C. § 107(a)(1)) was not discussed by the court.

support it, nor were any such matters put in issue by the pleadings.

We do not know what the true facts of this entire situation were. Neither did the trial court. It should have proceeded to find out.

The judgment is reversed.

Stephens, J., and Moor, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 23, 1968.

---

*Assigned by the Chairman of the Judicial Council.