990 F.2d 1261
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John H. TROUTWINE and Kerry E. Troutwine, Plaintiffs-Appellants,
v.
NEVADA COUNTY, et al., Defendants-Appellees.
 No. 90-16494.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 18, 1992.*
Submission Withdrawn Nov. 30, 1992.
Resubmitted March 18, 1993.
Decided March 24, 1993.
 
 Before ALARCON, BOOCHEVER and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John and Kerry Troutwine appeal from the district court's order granting the defendants' motion for summary judgment on their claims against the Nevada County Sheriff's Department and Deputies Jeffrey Burget and Larry Gaines under 42 U.S.C. § 1983 for violations of the Fourth, Fifth and Fourteenth Amendments and their state claims for false arrest and deprivation of property. The district court had jurisdiction under 28 U.S.C. §§ 1343(a)(3) and 1367(a), and this Court has jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 
 3
 * We first address John's claim that his warrantless arrest violated the Fourth Amendment. John argues that the deputies lacked probable cause to arrest him for brandishing a gun, and the district court erred in ruling to the contrary, because he was entitled to brandish the weapon in self-defense and defense of his property. This Court reviews a grant of summary judgment de novo, applying the same standard used by the trial court under Rule 56(c) of the Federal Rules of Civil Procedure. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). We need not affirm for the reasons given by the trial court, however, and may uphold the judgment on any basis supported by the record. Lee v. United States, 809 F.2d 1406, 1408 (9th Cir.1987), cert. denied, 484 U.S. 1041 (1988).
 
 
 4
 The district court held that Deputies Burget and Gaines had probable cause to believe that John Troutwine had committed the misdemeanor of brandishing a weapon, in violation of California Penal Code section 417(a)(2). This statute prohibits brandishing a firearm in a rude, angry or threatening manner, except in self-defense. Cal.Penal Code § 417(a)(2) (West 1988). Rather than make the finding that probable cause did in fact exist, the district court should have addressed the Defendants-Appellees' defense of qualified immunity.[1] Under the standard set forth in Anderson v. Creighton, 483 U.S. 635 (1987), an official is entitled to qualified immunity if a reasonable officer in his position could have believed Troutwine's warrantless arrest was lawful, in light of clearly established law. This determination may be made on summary judgment if there are no genuinely disputed material factual issues, resolution of which is necessary to determine qualified immunity. Act Up!/Portland v. Bagley, No. 90-35888 (9th Cir. Feb. 10, 1993). Clearly established law permits a warrantless arrest when an officer has reasonable cause to believe an offense has been committed in his presence. Cal.Penal Code § 836(1) (West 1985). Accordingly, the deputies were entitled to immunity from damages for arresting John if a reasonable officer under the circumstances could have thought no privilege existed to justify the brandishing of the gun and thus could have thought John had committed a misdemeanor in doing so. State law likewise provides qualified immunity from claims of false arrest if an officer had "reasonable cause to believe such arrest was lawful" when made. Cal.Penal Code § 847(a) (West 1985).
 
 
 5
 The undisputed facts show that John approached the intruders and not vice versa; that they were more than 150 feet away from him and, though on his property, on the opposite side of the river from him; that from the direction they approached, no "no trespassing" signs were visible to alert them that they were on private property; that they had no weapons in view; and that they did not threaten the Troutwines or give other offense beyond their presence on the property. Since those facts are undisputed, no reasonable jury could find otherwise. The law explicitly makes only self-defense, and not defense of property, a defense to brandishing a weapon. Cal.Penal Code § 417(a)(2) (West 1988). We find that the undisputed facts are sufficient to support an objectively reasonable belief that the conduct was lawful even viewing the disputed facts most favorably to the Troutwines. A reasonable officer could have believed that John's conduct in coming down from his cabin to within eight feet of them with his gun and provoking a confrontation was not privileged as self-defense under these circumstances. Absent such privilege, a reasonable officer could have believed that John had committed the misdemeanor of brandishing a weapon in his presence. It cannot be said that the unlawfulness of the arrest, if unlawful, was so apparent that no reasonable officer could have believed the arrest was warranted by law. See Malley v. Briggs, 475 U.S. 335, 341 (1986). Thus, the deputies are entitled to qualified immunity. This is so, notwithstanding the fact that a jury could also reasonably acquit John of criminal charges on the basis of self-defense. "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter v. Bryant, 112 S.Ct. 534, 536 (1991) (per curiam) (citing Anderson, 483 U.S. at 641). Qualified immunity affords law enforcement officials the benefit of the doubt in close calls, since " 'officials should not err always on the side of caution' because they fear being sued." Hunter, 112 S.Ct. at 537 (citation omitted). Accordingly, we find that Defendants-Appellees Burget and Gaines are entitled to qualified immunity from damages on the state and federal claims of false arrest.
 
 
 6
 As to Nevada County: State law grants a county immunity for employees' acts when the employee is immune from liability. Cal.Gov't Code § 815.2(b) (West 1980). Since the deputies are immune under these circumstances, Nevada County is entitled to derivative immunity on the state false arrest claims. The Troutwines correctly state that the County cannot rely on the qualified immunity of its officers as to the federal claims. See Owens v. City of Independence, 445 U.S. 622 (1980). But the County cannot be held liable under section 1983 for its employees' acts unless plaintiffs prove the existence of an unconstitutional policy, regulation, or ordinance, promulgated by officials with final policy-making authority. City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988); Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690 (1978). To withstand summary judgment on his claim against the County, John must show by admissible evidence the existence of those elements essential to the case on which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The more implausible the claim, the more persuasive the evidence required. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). John has failed to produce any credible evidence of a County custom or policy of making unlawful arrests. The allegation that the County engineered this incident in order to obtain an easement in the Troutwine's property falls far short of these requirements. Accordingly, the federal false arrest claim against Defendant-Appellee Nevada County should have been, and hereby is, dismissed for failure to state a claim.
 
 II
 
 7
 We next consider Kerry Troutwine's claim that the deputies deprived her of a protected liberty interest in her personal security, in violation of the Fourteenth Amendment, by creating circumstances that forced her to walk several miles uphill in severe heat, with deliberate indifference toward her health. We review de novo the district court's determinations on questions of law and on mixed questions of law and fact that implicate constitutional rights. United States v. 50.5 Acres of Land, 931 F.2d 1349, 1352 (9th Cir.1991).
 
 
 8
 Wood v. Ostrander, 879 F.2d 583 (9th Cir.1989), cert. denied, 111 S.Ct. 341 (1990), recognized that a section 1983 action may redress injuries caused when an official "act[s] in callous disregard for [a person's] physical security." Id. at 589. But no genuine issue exists for trial, and summary judgment is proper, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.
 
 
 9
 Construing the facts most favorably to the Troutwines, it is clear that the deputies arrested John and took their vehicle, leaving Kerry behind in extremely hot temperatures, a half-mile from her own cabin but several miles from any other inhabitants, after John told them she had high blood pressure. It is undisputed, however, that the deputies offered Kerry a ride with them into town; there were already seven people in the vehicle; and she declined to go with them because they would not take her dogs also. Assuming arguendo that Kerry was endangered, no rational juror could find that the deputies affirmatively placed Kerry in that condition. Whatever causal connection there might have been between the deputies' conduct and her injury (which was weak at best) was severed by her refusal to accept their offer of aid. Moreover, if the threat to her welfare were at all significant, Kerry acted unreasonably in passing up a ride on behalf of her dogs. Accordingly, we affirm the district court's ruling that Kerry's constitutional rights were not violated.
 
 III
 
 10
 We next address the Troutwines' claims that use of their vehicle to transport John and the sheriffs' party constituted a deprivation of property. The district court found their possessory interest in the vehicle insufficient to ground a claim for deprivation of property. Alternatively, the court found that John's consent to the deputies' use of the vehicle negated any claim of deprivation of property by either him or Kerry. We conclude that the limited use made of the vehicle with John's apparent consent does not amount to a constitutional "deprivation" or "taking."
 
 
 11
 In determining whether there has been a deprivation of property without due process of law, the first inquiry is whether there is a constitutionally-protected property interest. We assume without deciding that the Troutwines' right to possession of the vehicle is a property right protected by state law and hence the Due Process Clause of the Fourteenth Amendment. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (property rights protected by Due Process must have independent source such as state law); Service v. Trombetta, 212 Cal.App.2d 313, 316 (1963) (person in possession, not legal owner, may maintain state law action for conversion); see generally W. Page Keeton et al., Prosser and Keeton on the Law of Torts §§ 14, 15, at 87, 102-04 (5th ed. 1984) (same).
 
 
 12
 The second inquiry is whether there has been a deprivation of the property interest, a taking away or a confiscation. At all times while the deputies occupied the vehicle, John also maintained possession. At all times while the deputies used the vehicle, John did also--he was unhandcuffed and he drove. When they reached the main road, the group switched to sheriffs' transport and the vehicle was left for John's son to pick up later that day. The deputies placed the car keys with John's personal effects at the jail. The deputies' use of the vehicle did not exclude either John or Kerry from any use they could have made of it, because John was under arrest and Kerry could not drive it. The use was short-lived--to drive four or five miles--and the vehicle suffered no damage.
 
 
 13
 Moreover, John apparently consented to the use of the vehicle. Using another's property is not a legal wrong when done with the person's consent. Klett v. Security Acceptance Co., 38 Cal.2d 770, 789-90 (1940); 14 Cal.Jur.3d, Conversion, § 30. When the complaining party is present at the time of the taking, his nonconsent must be shown by objective evidence, not subjective protest. Wade v. Southwest Bank, 211 Cal.App.2d 392, 406-07 (1962). John never objected to the use of his vehicle; indeed, he declares he was happy to use it, rather than hike from his cabin out to the main road to the sheriffs' cars. The Troutwines argue that any consent was coerced by the invocation of official authority, making any objection futile. John's subjective state of mind, however, is irrelevant in the inquiry whether the deputies unlawfully used his vehicle. The evidence adduced to withstand summary judgment, viewed most favorably to the Troutwines, reveals no threats or show of force or authority compelling John to provide the vehicle to the deputies, no objection to the use of the vehicle, and evidence of John's implied or apparent consent. On these facts, we hold that there was no constitutional "deprivation" or "taking" of the Troutwines' property.
 
 IV
 
 14
 The Troutwines argue that this Court should reach the issue, not decided by the district court, of whether their property on the Yuba River is subject to California's Public Trust doctrine. They contend that "this issue is certain to arise again on remand should this court reverse, and because of its public importance, this court should reach this issue." We see no question of public importance, and since we do not reverse, we decline to address this issue.
 
 V
 
 15
 The Troutwines seek an award of attorney fees pursuant to 42 U.S.C. § 1988 (1988). Section 1988 authorizes the Court to award attorney fees to the prevailing party in a civil rights action. Since the Troutwines are not the prevailing party, we do not award attorney fees.
 
 
 16
 The County suggests that this Court impose sanctions on the Troutwines for bringing an appeal it considers frivolous. Rule 38 of the Federal Rules of Appellate Procedure authorizes this Court to award "just damages" and costs to an appellee if it determines that an appeal is frivolous, but leaves the matter to the Court's discretion. We decline to impose sanctions on this appeal.
 
 CONCLUSION
 
 17
 On the federal and state claims of John Troutwine's false arrest and false imprisonment, we affirm the summary judgment on the ground of qualified immunity as to Defendants-Appellees Gaines and Burget. Defendant-Appellant Nevada County is entitled to derivative immunity against the state claims, and Plaintiffs-Appellants failed to state a cause of action against the County on the federal claims. We affirm the district court's determination that Kerry Troutwine's Fourteenth Amendment claim fails to state a constitutional violation. We affirm the grant of summary judgment for the Defendants-Appellees on the federal and state claims for deprivation of property, on the basis of failure to state a constitutional violation. Plaintiffs-Appellants are not entitled to attorney fees, and we decline to impose sanctions on them. The district court's order granting summary judgment in favor of the Defendants-Appellees is AFFIRMED.
 
 BOOCHEVER, Circuit Judge, dissenting:
 
 18
 While I agree with most of the majority's disposition, I respectfully dissent from the affirmance of the summary judgment in favor of Sheriff Deputies Jeffrey Burget and Larry Gaines on the claim of false arrest. The majority holds that qualified immunity shields the deputies from Troutwine's claims. In reviewing a summary judgment, however, the facts must be construed in the light most favorable to the party against whom the motion is filed. In re Bullion Reserve of N. Am., 922 F.2d 544, 546 (9th Cir.1991). Viewing the disputed facts in favor of Mr. Troutwine, I do not conclude that the deputies could reasonably have believed that their arrest of Troutwine was lawful.
 
 
 19
 The majority correctly states that qualified immunity protects an officer from a claim of false arrest if the officer had "reasonable cause to believe such arrest was lawful" when made. Cal.Penal Code § 847(a) (West 1985). Here, the deputies arrested Troutwine for violation of Cal.Penal Code § 417(a)(2), which prohibits a person, in the presence of another, from "draw[ing] or exhibit[ing] any firearm ... in a rude, angry, or threatening manner ..." except in self-defense. Cal.Penal Code § 417(a)(2) (West 1988). Qualified immunity is an affirmative defense, and the burden of proving the defense lies with the official asserting it. Harlow v. Fitzgerald, 457 U.S. 800, 815, 819 (1981). In moving for summary judgment, the official has the burden of demonstrating that there is no genuine issue of material fact. Houghton v. South, 965 F.2d 1532, 1537 (9th Cir.1992).
 
 
 20
 We recently held that an officer has qualified immunity from Fourth Amendment violations if he objectively could have believed that his conduct was lawful in light of clearly established law governing the conduct at issue. Act Up!/ Portland v. Bagley, No. 90-35888, slip op. 1071, 1076 (9th Cir. Feb. 10, 1993). Because the question of qualified immunity "should be determined by the district court at the earliest possible point in the litigation," we stated that whether the law governing the conduct at issue is clearly established and whether the facts alleged could support a reasonable belief that probable cause existed are both questions of law to be decided by the court. Id. at 1079. Thus a case involving qualified immunity will proceed to trial only "[i]f a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment...." Id.
 
 
 21
 We must apply the same analysis to ascertain whether qualified immunity shields an officer from a claim of false arrest. The inquiry, therefore, is whether there is a factual dispute which prevents us from deciding whether a reasonable officer could have believed he had probable cause to arrest Troutwine. See Hunter v. Bryant, 112 S.Ct. 534, 536-37 (1991). In Hunter the Court was faced with compelling, undisputed evidence from which Secret Service agents could have believed they had probable cause to arrest Hunter for making a threat to the life of the President. The defendant, Hunter, admitted to Secret Service agents that he wrote and delivered a letter stating that "Mr[.] Image wants to murder President Reagan on his up and coming trip to Germany," that "Mr[.] Image had conspired with a large number of U.S. officials in the plot to murder President Reagan" and others, and that "Mr[.] Image (NCC) still plans on murdering the President on his trip to Germany in May, 1985." Id. at 535. Hunter, however, refused to identify "Mr. Image." Id. The Secret Service arrested Hunter for making threats against the President, in violation of 18 U.S.C. § 871(a). The Court affirmed the granting of summary judgment in favor of the Secret Service agents on the ground of qualified immunity.
 
 
 22
 In contrast, this case presents several factual disputes which, if resolved in favor of Troutwine, preclude us from holding that a reasonable officer could have had probable cause to arrest Troutwine. According to Mr. Troutwine, it appears that he and his wife spent the night at their cabin in a remote area without means of communication. At about 5:30 a.m., the barking of their dogs awoke them. The Troutwines saw three "disheveled and raunchy" looking characters on their property across the shallow river, one of whom said, "Hey you, come down here, I want to talk to you." It was barely light. Troutwine took his .22 caliber rifle. He thought it was better to respond to the men's request than to wait for them to come up to the cabin. He carried the rifle in a port arms position, which is across the body with the barrel pointed at an upward angle. He could not tell whether the men were armed. The men were yelling in a wild and agitated manner. Troutwine waded across the river.
 
 
 23
 Sheriff Gaines said, "We are sheriffs looking for two lost boys." At first, Gaines did not give his name and hesitated before doing so.
 
 
 24
 Gaines was wearing a tee shirt and jeans. The men did not look like sheriffs, were not courteous like sheriffs, and the two men with Gaines had scraggly beards, unlike sheriffs. To Troutwine, Gaines acted like he was high on drugs or a hoodlum. Gaines showed no badge and furnished no identification.
 
 
 25
 At one point, Troutwine called to his wife to "go call the Sheriff."
 
 
 26
 Troutwine first felt threatened when Gaines lunged at him to try to grab the rifle. Troutwine had not pointed the rifle at the men until Gaines made the threatening lunge. Only then did Troutwine point the weapon at Gaines. Next, Gaines had one of the men go to the right, and Gaines went to the left and lunged at Troutwine a second time. Gaines was close enough to be dangerous. By pointing the rifle at Gaines, Troutwine caused him to stop when six or eight feet away.
 
 
 27
 The men left, and Troutwine backed up onto a large rock. Gaines returned with Deputy Burget. Troutwine saw Gaines running through the brush with his pistol held up in the air. The other person, Burget, appeared to have on black coveralls and immediately took cover. Finally Burget moved around enough so that Troutwine could see his Sheriff's patch on the coveralls. At that time, Troutwine laid the gun down, put his hands up, and said, "O.K."
 
 
 28
 In addition to the narrative, Troutwine explained that people often had a camp and guns in this remote area and that he had had prior trouble with marijuana growers in the neighborhood. There also had been television reports about dangerous people in the area, knowledge that could be inferred to the sheriffs.
 
 
 29
 Although Troutwine may have "exhibited a firearm" when he held the weapon at port arms position, the statute requires more. As noted earlier, Troutwine must have held the rifle in a "rude, angry, or threatening" manner for the deputies to have had reasonable cause to arrest him. Gaines knew he was out of uniform, without identification, and in an isolated area with two other individuals when he confronted Troutwine. In the light most favorable to Troutwine, I do not believe that a reasonable deputy could have believed he had probable cause to arrest Troutwine for his holding the rifle at port arms position.
 
 
 30
 As to pointing the weapon at Gaines, it was not until Gaines lunged at Troutwine that Troutwine pointed the rifle. It is reasonable to believe that Troutwine was acting in self-defense at that point. Similarly, when Gaines and Burget ran through the brush at Troutwine's position with Gaines waving a revolver, I would find that Troutwine was acting in self-defense when he again pointed the rifle. A reasonable belief that Troutwine pointed the rifle only in self-defense should have been reinforced when Troutwine put down the rifle immediately upon ascertaining that Burget was wearing a sheriff's uniform.
 
 
 31
 Viewing the facts in favor of Troutwine, as we must, I conclude that the deputies did not establish that a reasonable officer could have believed he had probable cause to arrest Troutwine. Accordingly, I dissent from the award of summary judgment to Gaines and Burget on the false arrest claim, but otherwise agree with the majority opinion.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defendants-Appellees' brief confuses the standard for probable cause with the standard for qualified immunity