[Civ. No. 55337. Second Dist., Div. Four. Aug. 31, 1979.]

HARTFORD FINANCIAL CORPORATION,
Plaintiff, Cross-defendant and Respondent, v.
JEAN S. BURNS, as Executor, etc., et al.,
Defendants, Cross-complainants and Appellants.

## COUNSEL

Smith & Hilbig, Milan D. Smith, Jr., and R. Scott Robinson for Defendants, Cross-complainants and Appellants.

Kranitz, Sarrow & Imerman, Jerome H. Sarrow and James B. Eglin for Plaintiff, Cross-defendant and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—Defendants appeal from a money judgment rendered against them in an action for conversion of personal property. The defendants originally named in plaintiff's complaint were J. S. Enterprises, Inc., a corporation, and S. H. Burns. The latter defendant died prior to trial and, substituted in his place was Jean S. Burns and

Ralph L. Bernstein, the executors of the will of S. H. Burns, whose true name was Sol H. Burns. Defendants filed an answer to plaintiff's complaint and also a cross-complaint in which defendants sought damages against plaintiff. Trial was by the court without a jury. The court executed findings of fact and conclusions of law and gave judgment against defendants on their cross-complaint and judgment on the complaint in favor of plaintiffs and against defendants in the amount of $41,500, with interest from March 23, 1973.

## I

### The Factual Background

Plaintiff was engaged in the commercial finance business and dealt primarily in loans to businesses, secured by encumbrances primarily on heavy equipment such as trucks. In the year 1972, plaintiff entered into a security agreement with Marler Trucking, wherein plaintiff was granted a security interest in certain personal property belonging to Marler Trucking as security for loans and advances made by plaintiff to Marler Trucking. Plaintiff entered into a similar written security agreement with Kenneth Dunaway and Kathleen Dunaway.

Also in the year 1972, Socal White Trucks, Inc., a corporation, entered into a written security agreement with Kenneth Dunaway and Roy Weber which granted a security interest in certain personal property owned by Dunaway and Weber as security for loans and advances made by Socal White Trucks. By virtue of assignments, plaintiff succeeded to the security interests of Socal White Trucks. All of the personal property which was subject to these security agreements was kept by Marler Trucking at commercial premises located at 920 Engracia Avenue, in Torrance. Defendants were the owner of these premises and Marler Trucking was a lessee of defendants.

During February of 1973, the debtors under the security agreements defaulted in the payment of their obligations to plaintiff. On March 21, 1973, plaintiff sought to obtain, from the premises occupied by Marler Trucking, possession of the personal property that was subject to the security agreements. These items of personal property consisted of the following vehicles and other personal property: one 1969 Mack, model RL758LT3824, No. Y40024; one 1969 White, Freightliner, No. STP4624; one 1965 White, Freightliner, No. ALI4849; one 1958 White, Tractor, No. 3379; one 1959 Strick 40' Van, I.D. #36217; one 1959 Strick 40' Van, I.D.

#36213; one 1956 Utility 40' Van, I.D. #27187; one 1967 White, Freightliner, Tractor Engine #NTC335, S/N #CA210ZL0-31135; miscellaneous personal property.

On March 21, 1973, and on March 23, 1973, defendants were exercising dominion and control of these items of personal property and, on the latter date, refused to permit plaintiff to take possession of these items of personal property. As a result, the trial court found that defendants had committed the tort of conversion, entitling plaintiff to a judgment for damages in the amount of the value of this personal property on the conversion date of March 23, 1973.

## II

### *Summary of Defendant's Contentions*

Defendants advance the following contentions as grounds for reversal of the judgment: (1) plaintiff did not have a sufficient right to possession of the personal property to recover in conversion; (2) the evidence is insufficient to support the court's finding that any acts of defendants amounted to a conversion of the personal property involved; (3) the evidence does not support the court's finding as to the amount of damages suffered by plaintiff.

## III

### *The Plaintiff's Right to Possession of the Personal Property*

It is the position of defendants that plaintiffs did not establish a sufficient interest in the personal property involved on March 23, 1973, to give plaintiff a right of action against defendants for conversion of this personal property.

The evidence establishes that Marler Trucking failed to pay the rent due to defendants on the premises in Torrance for February and March of 1973 and abandoned the premises in early March of that year. On March 12, 1973, the Internal Revenue Service seized the personal property of Marler Trucking and took control of all personal property on the premises. On March 21, 1973, the Internal Revenue Service made a determination that Marler Trucking had no saleable interest in the personal property that had been seized and released the seizure. On the

same date of March 21, 1973, defendants S. H. Burns and J. S. Enterprises, Inc., took control and dominion over the premises and all of the personal property contained thereon.

On March 21, 1973, a representative of plaintiff asked defendant S. H. Burns to unlock the building where the personal property involved in this litigation was physically located so that plaintiff could obtain possession of the property. Burns refused to grant the request and advised the plaintiff's representative that the personal property would not be released until the rent due from Marler Trucking had been paid. On March 23, 1973, a different representative of plaintiff went to the premises in Torrance and sought to obtain possession of the property on behalf of plaintiff. Defendant S. H. Burns again refused to allow plaintiff's representative access to the property and advised him that the property would not be released to plaintiff until the accrued rent due from Marler Trucking had been paid to defendants.

■ The tort of "conversion" has been defined as follows: "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." (*Igauye* v. *Howard* (1952) 114 Cal.App.2d 122, 126 [249 P.2d 558].) ■ Similarly, we find this description of the elements of a cause of action for conversion of personal property: "The elements of a conversion cause of action are (1) plaintiffs' ownership or *right to possession of the property* at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." (*Baldwin* v. *Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 410 [145 Cal.Rptr. 406].) (Italics added.)

It is clear that legal title to property is not a requisite to maintain an action for damages in conversion. To mandate a conversion action "it is not essential that plaintiff shall be the absolute owner of the property converted but she must show that she was *entitled to immediate possession at the time of conversion.*" (*Bastanchury* v. *Times-Mirror Co.* (1945) 68 Cal.App.2d 217, 236 [156 P.2d 488].) (Italics in original.)

■ Defendants argue that plaintiffs should have perfected their security interest in the motor vehicles through compliance with sections

6301, 6302, and 6303 of the Vehicle Code.[1] But the provisions of the Vehicle Code dealing with perfection of security interest do not govern the question of whether a person who has a security interest in a motor vehicle may bring an action for damages for conversion against one who has no interest, security or otherwise, in such a motor vehicle.

For their view that plaintiff had an insufficient interest in the personal property involved herein to maintain an action for conversion, defendants also rely upon section 9503 of the California Uniform Commercial Code. Section 9503 provides, in part pertinent to the issue before us, that "[u]nless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

■ The decisional law has recognized that plaintiffs "as secured parties, although not owners, have a special interest with a right of possession only if there is a default and the security agreement allows plaintiffs to take possession." (*Baldwin, supra,* 79 Cal.App.3d 393, 410.) This principle was set forth specifically with respect to a motor vehicle in *Crosswhite* v. *American Insurance Co.* (1964) 61 Cal.2d 300, 302 [38 Cal.Rptr. 412, 392 P.2d 5], in which the court observed: "The truck was subject to a mortgage securing an obligation that was in default. The mortgage expressly granted the mortgagee the right to possession after default, and under its terms the mortgagee could have repossessed the truck without legal process, at least if the repossession could have been accomplished peacefully."

---

[1]Vehicle Code section 6301 provides in part as follows: "When the secured party, his successor or assignee, has deposited with the department a properly endorsed certificate of ownership showing the secured party as legal owner or an application in usual form for an original registration, together with an application for registration of the secured party as legal owner, the deposit constitutes perfection of the security interest and the rights of all persons in the vehicle shall be subject to the provisions of the Uniform Commercial Code, . . ."

Vehicle Code section 6302 provides: "Upon the deposit of an application for registration of a secured party as legal owner and upon the payment of the fees as provided in this code, the department shall register the secured party, his successor or assignee as legal owner in the manner provided for the registration of motor vehicles under the provisions of this chapter."

Vehicle Code section 6303 provides: "Except as provided in Sections 5905, 5907 and 5908, the method provided in this chapter for perfecting a security interest on a vehicle registered under this code is exclusive, but the effect of such perfection, and the creation, attachment, priority and validity of such security interest shall be governed by the Uniform Commercial Code."

In the case at bench, the security agreements gave plaintiff the right to take possession of the trucks upon default. Defendants argue that since, under California Uniform Commercial Code section 9503, a secured party may take possession of the collateral on default only if it can be done without a breach of the peace, plaintiff was not entitled to the immediate possession of the various trucks because they could not have been obtained without a breach of the peace occurring. That self-help by plaintiff would have produced a breach of the peace is apparent, since defendants refused plaintiff's request for possession on both March 21 and March 23, 1973.

To support this position, defendants also rely upon *Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764 [140 Cal.Rptr. 388]. In *Henderson,* the court held that a secured party who, by means of force, took possession of a motor vehicle upon default of the buyer, committed the tort of conversion and thus became responsible in damages to the defaulting owner. This holding of *Henderson,* however, is no authority for defendants' position that a secured party cannot have the right to immediate possession of the collateral upon default if actual possession can be secured only through a breach of the peace.

*Henderson* did not constitute a holding that the secured party was *not* entitled to immediate possession of the hypothecated vehicle if such possession could not have been accomplished without the use of force or threats of force. ■ The only rule of law to be deduced from *Henderson* is simply that the right to immediate possession by a secured party upon default must be effectuated through judicial action rather than self-help if force or threats of force are necessary to secure possession of the collateral without judicial intervention. " ' "[I]f the mortgagee finds that he cannot get possession without committing a breach of the peace, he must stay his hand, and resort to the law, for the preservation of the public peace is of more importance to society than the right of the owner of a chattel to get possession of it." ' " (*Henderson, supra,* 72 Cal.App.3d 764, 770.)

■ We conclude, therefore, that the evidence establishes that plaintiff had a right to immediate possession of the personal property involved in the case before us, and that such right of possession was sufficient to entitle plaintiff to maintain an action for damages against defendant for the tort of conversion.

IV

■ *Sufficiency of the Evidence to Support
the Trial Court's Finding That Acts of
Defendants Amounted to a Conversion of
the Personal Property Involved*

Defendants advance the argument that the evidence was insufficient to support the court's finding that defendants had converted the personal property at issue. Defendants contend that (1) their actions can be characterized only as a threat to prevent access by plaintiff to the personal property involved and that such a threat does not amount to a conversion of the personal property; and (2) that defendants were entitled to "rent" as an involuntary bailee of the personal property and had a right to refuse to surrender the property to plaintiff until such "rent" had been paid.

A. *Did Any Acts of Defendants Amount to a Conversion of the Personal
Property Involved?*

Although defendants assert that they exercised no dominion or control over the personal property involved but merely made a threat to prevent access by plaintiffs to the property, the issue before us is whether the evidence was sufficient to support the trial court's findings that "[o]n March 21, 1973, defendants, and each of them, had dominion and control over the aforesaid personal property described in Finding of Fact No. 11 hereinabove" and that "[o]n March 23, 1973, defendants and each of them, wrongfully refused plaintiff's request to take possession of the personal property described in Finding of Fact No. 11, pursuant to its right to immediate possession thereof, and defendants, and each of them, thereby converted said personal property, and are therefore liable to plaintiff for damages."

Defendants assert that they never had possession of this property or exercised any dominion and control over it at the two times that plaintiff demanded possession. Defendants take the position that the property was in the possession of defendants' tenant—Marler Trucking—on these occasions. But the evidence presented was such that the trial court could reasonably conclude that Marler Trucking had abandoned the premises and the personal property located thereon in early March 1973, which was prior to seizure of this personal property on the premises by the Internal Revenue Service on March 12, 1973. The evidence also establishes that, when the Internal Revenue Service released its dominion

and control over this personal property on March 21, 1973, it surrendered dominion and control over the property to defendants who, thereafter, exerted dominion and control by locking the doors to the area and building where the property was stored, by refusing plaintiff's demand for surrender of such property, and by asserting to plaintiff's representatives that surrender would be made only when the back rent owed by Marler Trucking to defendants was paid.

Defendants cite *Zaslow* v. *Kroenert* (1946) 29 Cal.2d 541 [176 P.2d 1], as supporting their position that no acts were committed by defendants with reference to this property which would amount to a conversion. But our reading of *Zaslow* does not support defendants' version of the *Zaslow* holding. The tortious act of conversion may be defined as follows: "Stated generally, 'conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' [Citations.]" (*Zaslow, supra,* 29 Cal.2d 541, 549.) ■ The *Zaslow* court made the following observation, which is pertinent to this issue before us: "The liability of one in possession of real property for the conversion of personal property which he finds upon it, depends, in most cases, upon a determination of whether the conduct of the defendant indicates an assumption of control or ownership over the goods. It is clear that, under some circumstances, refusal of one in possession of real property to permit, upon demand, the owner of chattels which were left there to remove his goods, constitutes conversion." (*Id.,* at pp. 549-550.)

It must be noted, however, that not every failure to deliver goods to the owner constitutes a conversion. "To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, *or to prevent the owner from taking possession of his property.*" (*Id.,* at p. 550.) (Italics added.) In the case at bench, however, the evidence justifies the court's conclusion that defendants intended to and did exercise ownership over the personal property herein involved in order to preclude the plaintiff from taking possession of it.

B. ■ *Marler Trucking's Rent Indebtedness to Defendants as Justification for Defendants' Refusal to Surrender the Personal Property to Plaintiff*

Defendants assert that they constituted an involuntary bailee of the personal property and, as such, were entitled to collect "rent" from

plaintiffs before acceding to plaintiff's demand for the property. Defendants rely upon *Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1 [94 Cal.Rptr. 904], for this position. The *Gray* case dealt with Code of Civil Procedure section 1174, which authorizes a landlord to recover his reasonable costs of storage of a lessee's property when such landlord has been successful in obtaining restitution of his premises pursuant to an unlawful detainer action.

 "In this state it is an established principle that 'Where one performs for another, with the other's knowledge, a useful service of a character usually charged for, and the latter expresses no dissent, or avails himself of the service, a promise to pay the *reasonable* value of the services is implied.' [Citations.] This principle has been applied when an owner of property, entitled to possession of the premises, has advised the tenant or occupant that if he did not remove his property it would be placed in storage at his expense. [Citations.] In such a case where the tenant or occupant chooses to allow it to be stored in a warehouse there is an implied agreement on his part to pay the reasonable storage charges." (*Gray, supra,* 17 Cal.App.3d 1, 24-25.) (Italics in original.)

The *Gray* case offers no assistance to defendants' position. *Gray* points out that the provisions of Code of Civil Procedure section 1174 do not permit a landlord to hold a tenant's goods as "ransom" for the payment of back rent under the guise of storage costs. It was emphasized "that the judgment for unpaid rent and the storage costs are separately incurred debts and that the liability for each arises under separate and different obligations." (*Id.,* at p. 24.) Here we have a case in which defendants' refusal to surrender possession to plaintiff of personal property originally belonging to defendants' tenant, Marler Trucking, was based upon the fact that there was back rent owed to defendants by Marler Trucking and that payment of this rent was a condition precedent to defendants' release of the property. This is not an assertion of any implied agreement for storage costs governed by the *Gray* case.

Defendants have cited no authority other than *Gray* for the proposition that defendants, as landlord of Marler Trucking, were entitled to retain possession of Marler Trucking's personal property, which was subject to a security interest in plaintiff, until the back rent was paid to defendants. The position of defendants is an untenable one and is unavailable for any valid attack upon the judgment below.

## V

### The Amount of Damages Awarded to Plaintiff

Defendants attack the award of damages upon several grounds. The trial court determined plaintiff's damages as $41,500 by first considering the value of the personal property on the date of the conversion as being in the sum of $75,500. From this amount there was deducted the sum of $28,000 as depreciation. The court then deducted the further sum of $6,000, which constituted the amount received by plaintiff on the sale of the personal property after plaintiff had obtained possession months later.

In urging that this calculation of damages was erroneous, defendants assert that (1) the trial court erred in refusing to admit evidence regarding the unpaid principal balance of Marler Trucking's indebtedness to plaintiff; and (2) the trial court failed to take into account plaintiff's responsibility to mitigate damages.

A. *The Trial Court's Refusal to Admit Evidence as to the Unpaid Principal Balance on Marler Trucking's Indebtedness to Plaintiff*

Defendants do not dispute the fact that the personal property involved had a reasonable market value of $75,500 as of the date of the alleged conversion. It is defendants' position, however, that plaintiff's right to recover the total value of the personal property converted is limited by the doctrine that, in an action of conversion, one holding a security interest is limited to recovery of the remaining amount of indebtedness owed by the debtor on the property, in the event the total value of the property exceeds the amount of the indebtedness. On this theory, defendant contends that Marler Trucking's indebtedness to plaintiff at the time of the conversion was less than $41,500. Hence, plaintiff would be entitled to recover only this lesser sum.

No evidence was offered by plaintiff as to the remaining balance owed by Marler Trucking to it and the trial court refused to admit any evidence proffered by defendants to determine the amount of such indebtedness. The trial court sustained plaintiff's objection to defendants' proffered evidence on the ground that such evidence was irrelevant.

In *Bastanchury, supra*, 68 Cal.App.2d 217, 236, we find the statement that "[o]ne who holds property by virtue of a lien upon it may maintain

an action for conversion if the property was *wrongfully* disposed of *by the owner* and without authority, in which case the measure of damages can be no greater than the *amount secured by the lien* . . . ." (First italics in original; other italics added.) Similar to *Bastanchury* is *Service* v. *Trombetta* (1963) 212 Cal.App.2d 313, 316 [28 Cal.Rptr. 68], in which the court stated: "The measure of damages is the value of the property at the time and place of the conversion [citations], limited, however, in the case of the loss of a lien, to the amount of the lien together with an allowance for lost time and expense. (Civ. Code, § 3338.)"[2] Defendants argue that the principle set forth in *Bastanchury*—which is also set forth in *Service*—is authority for their position that the trial court erred in excluding evidence of the balance owed by Marler Trucking to plaintiff.

It is to be noted that the rule as to measure of damages set forth in *Bastanchury* and *Service* relates to an action by a lien holder for conversion against the *owner* who was indebted to the lien holder. In the case at bench, however, we deal with an action by a lien holder against a nondebtor or stranger to the lien holder. In the latter situation, the measure of damages in an action for conversion is different from that set forth in *Bastanchury* and *Service.* In *Camp* v. *Ortega* (1962) 209 Cal.App.2d 275, 286 [25 Cal.Rptr. 837], the court aptly observed: "In an action for damages for conversion, it is the rule that the plaintiff, although owning but a limited or qualified interest in the property may, as *against a stranger* who has no ownership therein, recover the full value of the property converted." (Italics added.)

The rationale of the rule of damages set forth in *Camp,* which permits recovery of the full value of the property by a person having a limited interest in the property, is that the owner of the limited interest will be liable to the owner of the remaining interest for any amount the former received in the conversion action that exceeds the amount of his claim or indebtedness. It was stated in *Goldberg* v. *List* (1938) 11 Cal.2d 389, 393 [79 P.2d 1087, 116 A.L.R. 900]: "Moreover, an analysis of the authorities

[2]Civil Code section 3338 provides: "One having a mere lien on personal property cannot recover greater damages for its conversion, from one having a right thereto superior to his, after his lien is discharged, than the amount secured by the lien, and the compensation allowed by Section 3336 for loss of time and expenses."

Civil Code section 3336 provides: "The detriment caused by the wrongful conversion of personal property is presumed to be: [¶] First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and [¶] Second—A fair compensation for the time and money properly expended in pursuit of the property."

which support the rule that a recovery of the full value of the property converted may be had by a person having only a limited or qualified interest therein, indicates that the underlying reason and basis for such recovery is the fact that the party having the limited or qualified interest is liable over to the owner of the remaining interest, and in order to be adequately compensated must receive sufficient compensation not only to compensate himself for his own loss but to satisfy the demands of such owner."

Defendants argue that the rule of law set forth in *Camp* should not be applied in the case at bench rather than the rule of *Bastanchury* because no possibility exists that if plaintiff's judgment for $41,500 exceeds the amount owed by Marler Trucking to plaintiff, plaintiff will be required to pay any excess to Marler Trucking. Defendants point out that Marler Trucking was adjudicated a bankrupt. But the bankruptcy adjudication of the plaintiff's debtor cannot affect the rule as to damages for conversion since the assets and rights of the debtor are transferred to the trustee in bankruptcy. Marler Trucking's right to any sum received by plaintiff from defendant in excess of Marler Trucking's indebtedness to plaintiff, passed to the trustee in bankruptcy who could assert a claim against plaintiff for such sum.

But whether the trustee in bankruptcy would actually seek recovery against plaintiff is an irrelevant consideration. Defendants are in no position to take advantage of the possibility that plaintiff may never be required to answer over to Marler Trucking's trustee in bankruptcy for any excess recovery over the amount of plaintiff's lien. Defendants here must be governed by the principle that "[t]he plain answer to the problem posed is that the defendant is the wrongdoer and having brought about the above situation should bear the resultant risks and disadvantages." (*Camp, supra,* 209 Cal.App.2d 275, 289.)

### B. *No Showing of a Failure on Plaintiff's Part to Mitigate Damages*

Defendants assert that plaintiff could have reasonably avoided some portion of the damages which resulted in this case before us. Defendants rely upon that portion of Civil Code section 3336 which provides that the damages for a wrongful conversion of personal property constitutes "an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and *which a proper degree of prudence on his part would not have averted.*" (Italics added.) Defendants point out that between the

alleged date of conversion, March, 23, 1973, and September 1973, plaintiff did nothing other than to file the action against defendants for conversion. The conversion action was filed on August 8, 1973. Apparently, it is the position of defendants that, had plaintiff secured possession of the personal property earlier than September 1973, the property would not have suffered so much depreciation and could have been sold for more than $6,000, the total price received by plaintiff from sales of the property made in September and October of 1973.

Defendants assert that when in March 1973, plaintiff failed to recover possession of the property from defendants by peaceable means, plaintiff had a duty to resort immediately to available legal remedies to prove their right to recover possession of the property instead of simply delaying and instituting the action for damages for conversion. Defendants argue that this is the net effect of the holding in *Henderson,* which declared that a lien holder who resorts to force to secure possession of property which is subject to the lien commits an act of conversion.

But it is a wholly unwarranted and untenable interpretation of *Henderson* to conclude that Civil Code section 3336 or California Uniform Commercial Code section 9503 requires a lien holder to institute an immediate action to recover possession of property when a defendant fails to recognize a lien holder's demand for such property or, otherwise, incur the risk that such failure would be deemed a failure to mitigate damages under Civil Code section 3336. Defendants allude to no decisional law support for such a suggested rule of law with respect to the duty to mitigate damages. Although "it is the burden of anyone having a claim against another to do everything reasonably proper to mitigate damages" (*Service, supra,* 212 Cal.App.2d 313, 320), this principle cannot be successfully invoked to require a plaintiff to file an immediate action to recover possession of property which has been converted by defendant rather than filing a conversion action for damages at a time deemed appropriate by plaintiff.

The judgment is affirmed.

Kingsley, Acting P. J., and Alarcon, J., concurred.