658 F.2d 664
 TYRONE PACIFIC INTERNATIONAL, INC., Plaintiff-Appellant,
v.
The vessel MV EURYCHILI, her hull & machinery; Ta Peng
Steamship Company, Ltd.; Ta Lai Steamship Company,
Ltd.; Lee Lai Maritime S. A.; and
Furness Interocean
Corporation,
Defendants-
Appellees.
 No. 79-4331.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 13, 1981.
Decided Oct. 5, 1981.
 
 John E. Droeger, Hall, Henry, Oliver & McReavy, San Francisco, Cal., for plaintiff-appellant.
 Francis L. Tetreault, Graham & James, San Francisco, Cal., argued for defendants-appellees; A. M. Young, San Francisco, Cal., on brief.
 Appeal from the United States District Court for the Northern District of California.
 Before WALLACE and POOLE, Circuit Judges, and CORDOVA,* District Judge.
 POOLE, Circuit Judge:
 
 
 1
 Tyrone Pacific International (Tyrone), a shipper, brought suit in federal admiralty jurisdiction against its carrier, Ta Peng Steamship Co. (Ta Peng), the vessel Eurychili, and Ta Peng's local agent, Furness Interocean Corporation (Furness). Ta Peng is now defunct, and a default judgment entered against it is apparently uncollectible. The vessel was never served. Only Tyrone and Furness are now before this court. The District Court for the Northern District of California entered judgment pursuant to the report of the Magistrate to the effect that, although Furness had violated 46 U.S.C. § 193 and was liable for a statutory penalty under 46 U.S.C. § 194,[1] Tyrone's claim for additional damages was without merit. Furness did not appeal the judgment entered against it, but Tyrone appeals the denial of its damage claim.
 
 
 2
 Tyrone booked about 1200 metric tons of cargo for shipment aboard Ta Peng's vessel, the Eurychili, from Richmond, California to Kaohsiung on Taiwan. While the cargo was being loaded, a dispute arose concerning the amount of space that would be allocated to carry it. After about 748 metric tons had been loaded, the shipmaster refused to take more below decks. Tyrone declined to allow its remaining cargo to be stored on deck, and the vessel sailed carrying only the 748 tons.
 
 
 3
 Under the terms of the contract, freight on the cargo was to be paid two days after bills of lading were issued. The magistrate found that all parties concerned had contemplated that Furness would issue the bills as Ta Peng's agent. However, after the ship sailed, Ta Peng instructed Furness not to issue any bills of lading until Tyrone paid "dead freight," i. e., the full amount of freight that would have been due had the entire 1200 metric tons of cargo been shipped. When Tyrone demanded bills of lading on the 748 metric tons shipped, it was met with Ta Peng's demand. Tyrone disputed its liability for dead freight, but in the face of Furness' refusal to issue any bills without such payment, Tyrone paid the full amount. Furness then issued the bills.
 
 
 4
 Tyrone claims that Ta Peng had no right to extract dead freight payments and that it is entitled to reimbursement. Frustrated in its efforts to recover from Ta Peng, it seeks to hold Ta Peng's agent liable. Tyrone argues that Furness "converted" the bills of lading when, on behalf of Ta Peng, it withheld the bills against payment of money that Ta Peng had no right to demand.
 
 
 5
 The elements of the tort of conversion are well settled in California:
 
 
 6
 (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages.
 
 
 7
 Hartford Financial Corp. v. Burns, 96 Cal.App.3d 591, 598, 158 Cal.Rptr. 169 (1979). "Conversion" has been defined as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Id.
 
 
 8
 Tyrone makes a plausible case with regard to the first two elements of the tort. Furness undoubtedly had a legal duty to issue bills of lading to Tyrone, 46 U.S.C. § 193, and its refusal to do so was, as the district court found, a wrongful act of dominion over Tyrone's property.
 
 
 9
 Nonetheless, Tyrone cannot fit its quarrel with Furness into the conversion mold because it cannot establish an entitlement to conversion damages. California Civil Code § 3336 provides:
 
 
 10
 The detriment caused by the wrongful conversion of property is presumed to be:
 
 
 11
 First The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; ...
 
 
 12
 Interpretations of this section by the California courts have tracked the traditional common law conception of conversion as a forced sale. Thus, the courts have determined that:
 
 
 13
 Although the first part of section 3336 appears to provide for alternative measures of recovery, the first of the two measures, namely the value of the property converted at the time and place of conversion with interest from that time, is generally considered to be the appropriate measure of damages in a conversion action.... The determination of damages under the alternative provision is resorted to only where the determination on the basis of value at the time of the conversion would be manifestly unjust.
 
 
 14
 Myers v. Stephens, 233 Cal.App.2d 104, 116, 43 Cal.Rptr. 420 (1965). Even when applying the alternative provision, the courts look to the value of the property as the measure of damages, calculating it on a different basis where justice demands. Thus, for example, a court awarded the value of the converted property at a time after the conversion where it found that the owner had taken pains to avoid selling at the time of conversion in anticipation of a later increase in value. Betzer v. Olney, 14 Cal.App.2d 53, 61, 57 P.2d 1376 (1936). The alternative measure might also be appropriate where the owner has voluntarily accepted return of his property, but its value has declined as a result of the conversion. In such a case, award of the full value of the property would be unfair to the defendant; instead, he would be ordered to restore to the owner the amount by which the value has declined. See W. Prosser, The Law of Torts 97 (4th ed. 1971).
 
 
 15
 Tyrone argues that it is entitled to recover the dead freight charges under this second conversion damage measure. However, this argument entirely ignores the fact that conversion damages are based on the value of the converted property, and the fact that the dead freight charges were not related in any way to the value of the bills of lading. The magistrate correctly determined that award of the dead freight charges would be inappropriate in a conversion action. The magistrate was also correct in his determination that Tyrone can take nothing under proper conversion damage measures. There was no evidence that the value of the bills declined during their detention by Furness; neither was there evidence that Tyrone's inability to transfer bills of lading on the cargo caused it to lose an opportunity to sell the cargo during that period. Hence, Tyrone suffered no damages cognizable in this action. It therefore failed to establish the third element of the tort, and its claim for damages was properly denied.
 
 
 16
 Tyrone has suggested to this court that 46 U.S.C. §§ 193, 194 and 1303 create an implied private right of action independent of the common law conversion remedy. The district court's order of remand invited Tyrone to make this argument before the magistrate; however, Tyrone never did so. Instead, it took the distinct position that the federal statutes create a legal duty, violation of which could give rise to the tort of conversion. Ordinarily, appellate courts should not consider issues not presented to the district court. Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); Hormel v. Helvering, 312 U.S. 552, 553, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). In view of Tyrone's very superficial argument on the issue here, we see no reason to depart from this rule.
 
 
 17
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Hon. Valdemar A. Cordova, United States District Judge, for the District of Arizona, sitting by designation
 
 
 [1]
 Section 193 provides:
 It shall be the duty of the owner or owners, masters, or agent of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to issue to shippers of any lawful merchandise a bill of lading, or shipping document, stating, among other things, the marks necessary for identification, number of packages, or quantity, stating whether it be carrier's or shipper's weight, and apparent order or condition of such merchandise or property delivered to and received by the owner, master, or agent of the vessel for transportation, and such document shall be prima facie evidence of the receipt of the merchandise therein described.
 Section 194 provides:
 For a violation of any of the provisions of sections 190-193 of this title the agent, owner, or master of the vessel guilty of such violation, and who refuses to issue on demand the bill of lading provided for, shall be liable to a fine not exceeding $2,000. The amount of the fine and costs for such violation shall be a lien upon the vessel, whose agent, owner, or master is guilty of such violation, and such vessel may be libeled therefor in any district court of the United States, within whose jurisdiction the vessel may be found. One-half of such penalty shall go to the party injured by such violation and the remainder to the Government of the United States.