[No. C000318. Third Dist. Mar 30, 1988.]

TERRY H. MESSERALL, Plaintiff and Respondent, v.
RON FULWIDER, Defendant and Appellant.

1326

---

COUNSEL

Robert F. Koehler, Jr., for Defendant and Appellant.

Dana F. Winterrowd for Plaintiff and Respondent.

## OPINION

SIMS, J.—In this case, we discuss what a professional bailee should do when someone other than the bailor demands possession of the bailed property. We conclude that when the bailee is presented with reasonably compelling evidence demonstrating a third party is entitled to possession, the bailee must investigate the third party claim. At a minimum, the bailee should try to ask the bailor whether the property may be released to the third party. If the bailor consents, the bailee should release the property to the third party. If the bailee is unable to obtain the bailor's consent, the bailee may protect himself from liability for conversion by filing an interpleader action (in which he ordinarily will be entitled to his attorney's fees and costs) to adjudicate the third party's claim of possession.

### FACTS AND PROCEDURAL HISTORY

Defendant Ron Fulwider (doing business as Precision Marine) appeals a judgment following a court trial awarding plaintiff Terry Messerall damages for conversion of personal property.

The facts are essentially undisputed. In 1979 Messerall purchased a boat and trailer (hereafter the property).[1] To pay for the purchase, Messerall obtained a loan from a bank. The property was registered with the Department of Motor Vehicles in Messerall's name, with the bank listed as the legal owner.

On June 4, 1982, Messerall entered a written agreement to sell the property to Shelly Scott. The agreement provided Scott would make installment payments and Messerall would retain title until the final payment was made. The agreement also provided that upon Scott's default, Messerall had the right to declare the entire unpaid balance of the note due and to retake possession of the property.

After Scott took possession, the registration with the Department of Motor Vehicles was not changed. Consequently, after this transaction, Messerall was still registered as the owner of the property, with the bank shown as the legal owner.

In August 1983, Scott brought the property to defendant Fulwider for repairs. Shortly thereafter, Messerall learned the property was at Fulwider's shop. Because Scott had not made the previous two months' payments, Messerall considered him to be in default of their agreement. Messerall decided to try to get possession of the property from Fulwider.

---

[1] On this appeal, the parties have discussed the law applicable to the boat. They have not suggested different law applies to the trailer. We therefore assume for purposes of argument the same law applies to the trailer as to the boat.

On September 19, 1983, Messerall met with Fulwider at the latter's place of business. At that time, Scott had paid for the requested repairs to the property but still owed $350.22 for storage. Messerall demanded possession of the property and presented a written statement in which he alleged he was entitled to immediate possession by virtue of Scott's default under their agreement. Messerall also offered Fulwider cash to pay the balance of Scott's charges for storage. Fulwider refused the money and declined to release possession. He informed Messerall that, upon the advice of his attorney, he would release the property only if Messerall presented a court order establishing his right to possession.

The attorneys for Messerall and Fulwider attempted to resolve the impasse over the next month, during which time Messerall stood ready to pay the storage charges in return for a surrender of the property. On September 26, Messerall's attorney sent Fulwider's attorney an unfiled complaint, verified under penalty of perjury, stating the basis of Messerall's claim to possession. On October 3, 1983, Messerall's attorney sent a letter to Fulwider's attorney asking Fulwider to contact Scott to verify whether Scott truly was in default. Messerall offered to indemnify Fulwider against any claims Scott might make. He demanded possession of the property by October 12, 1983; if that were refused, Messerall would file the complaint against Fulwider.

Fulwider made no investigation of the legitimacy of Messerall's claim and persisted in his refusal to allow Messerall to gain possession without a court order. On October 25, 1983, Messerall filed his complaint for conversion.

On November 28, Fulwider filed a cross-complaint in interpleader seeking a judicial determination of whether Scott or Messerall had the superior right to possession, as well as damages for unpaid storage and attorney's fees.

On December 1, Fulwider surrendered the property to the Sheriff who served a writ of possession obtained by Messerall. The property was released to Messerall, who refused Fulwider's demand for $700.22 in storage fees. Thereafter, the case went to trial.

The trial court found Fulwider was liable for conversion of the property. The court awarded Messerall damages of $2,350 for the reasonable value of the property during the time of Fulwider's wrongful refusal to release it to Messerall. The court found the conversion began on October 12, 1983, the ultimate deadline given Fulwider by Messerall's attorney, and ended on November 28, when Fulwider filed his cross-complaint in interpleader. The court denied Fulwider any relief on his cross-complaint. This appeal followed.

## DISCUSSION

Fulwider argues the court erred by concluding he was liable on a theory of conversion.

"The tort of 'conversion' has been defined as follows: 'Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use.' (*Igauye* v. *Howard* (1952) 114 Cal.App.2d 122, 126 [249 P.2d 558].) Similarly, we find this description of the elements of a cause of action for conversion of personal property: 'The elements of a conversion cause of action are (1) plaintiffs' ownership or *right to possession of the property* at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages.' (*Baldwin* v. *Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 410 [145 Cal.Rptr. 406].) (Italics added.) [¶] It is clear that legal title to property is not a requisite to maintain an action for damages in conversion. To mandate a conversion action 'it is not essential that plaintiff shall be the absolute owner of the property converted but she must show that she was *entitled to immediate possession at the time of conversion.*' (*Bastanchury* v. *Times-Mirror Co.* (1945) 68 Cal.App.2d 217, 236 [156 P.2d 488].) (Italics in original.)" (*Hartford Financial Corp.* v. *Burns* (1979) 96 Cal.App.3d 591, 598 [158 Cal.Rptr. 169].)

One who wrongfully withholds personal property from another who is entitled to it under a security agreement may be liable for conversion. (*Id.,* at p. 600.)

Fulwider contends Messerall had no right to possession of the property because the latter had not duly perfected his security interest. The Vehicle Code establishes the exclusive method for perfecting a security interest in a boat, such as that at issue here, which is required to be numbered under that code and is not inventory. (Veh. Code, § 9922; see Cal. U. Com. Code, § 9302, subds. (1)(d), (3)(b).)[2] The secured party is required to file with the Department of Motor Vehicles a properly endorsed certificate of ownership showing the secured party as the vessel's legal owner. (Veh. Code, §§ 9919-9920.) Both parties agree this was not done.

Fulwider concedes that the failure of Messerall to perfect his security interest under the Vehicle Code did not impair Messerall's contractual

---

[2] In an abbreviated argument we do not fully understand, Fulwider asserts Messerall was not entitled to possession under section 9305 of the California Uniform Commercial Code. That statute provides for perfection of a security interest by possession. That statute does not apply here because the provisions of the Vehicle Code provide the exclusive method of perfecting a security interest in the property.

right to take possession of the property from Scott. (See *Hartford Financial Corp.* v. *Burns, supra,* 96 Cal.App.3d at p. 599.) Indeed, Fulwider concedes Messerall had the right to repossess the property from Scott. However, Fulwider argues that Messerall's failure of perfection meant he could assert no priority against Fulwider, since Fulwider was also a creditor of Scott's.

To the extent Fulwider asserts he could defeat Messerall's claim by merely showing he was Scott's creditor, he erroneously assumes his status as creditor gave him a right to possession of the property. In order for Fulwider to defeat Messerall's claim to *possession* of the property, which is at issue in this action for conversion, it was incumbent on Fulwider to show not simply that he was Scott's creditor but also that he had a right to possession. (See *id.,* at p. 599.)

Fulwider argues he had a right to possession of the property because he had a lien on it for storage charges.[3] We shall assume for purposes of argument he had such a lien when Messerall first came to see him.

Fulwider's argument overlooks the fact that his lien was sufficient to deny Messerall's right to possession only until the lien was redeemed. Civil Code section 2905 provides in pertinent part, "Redemption from a lien is made by . . . offering to perform, the act for the performance of which it is a security, . . . or offering to pay, the damages, if any, to which the holder of the lien is entitled for delay." Civil Code section 2903 provides in pertinent part, "Every person, having an interest in property subject to a lien, has a right to redeem it from the lien, . . ."

Civil Code section 2914 provides that the aforementioned sections do not "apply to any transaction or security interest governed by the Uniform Commercial Code." However, California Uniform Commercial Code section 9104 states that the provisions of section 9101 et seq. do not apply to liens for services or materials except as their priority is treated by section 9310. (Cal. U. Com. Code, § 9104, subd. (c), and official comment thereto, esp. par. 3.)[4] Priority can exist only if the lien exists. California's Uniform Commercial Code does not govern the creation or extinguishment of the lien in question but only its priority in relation to other claims. Hence, the provisions of the Civil Code related to the redemption of liens apply. (*Ibid.*)

---

[3] Fulwider argues he had either a lien by Scott's consent (*Matter of Holiday Airlines Corp.* (9th Cir. 1981) 647 F.2d 977, 981); or a lien by operation of law (*Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1 [94 Cal.Rptr. 904]); or a "notice lien" (Harb. & Nav. Code, § 502, subd. (a)); or an "equitable lien" (*Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 313-317 [38 Cal.Rptr. 505, 392 P.2d 265]).

[4] In this vein, section 9310 provides that a lien claimant, who furnishes materials or services in the ordinary course of business with respect to goods subject to a security interest and in his possession, has priority over the holder of even a perfected security interest unless the lien statute provides otherwise.

Messerall, as the holder of a security interest, had an interest in the property and was therefore entitled to redeem Fulwider's lien. (Civ. Code, § 2903; see *Bumiller* v. *Bumiller* (1918) 179 Cal. 119, 124 [175 P. 897].) Thus, given Messerall's standing offer to pay the outstanding storage charges on the property, whatever lien Fulwider had was redeemed by October 12, 1983, the deadline set by Messerall's attorney and adopted by the trial court as the starting point of the conversion.[5] (See *Universal C.I.T. Credit Corp.* v. *Rater* (1963) 214 Cal.App.2d 493, 494-495 [29 Cal.Rptr. 631].) The trial court correctly so found.

Fulwider's right to possession also depended on his status as bailee of the boat. That status placed on him a duty to investigate Messerall's claim and gave him a limited right of possession during the investigation.

■ The law of bailments has long placed a duty of investigation upon the bailee. "There was indeed some authority in the early law that the bailee was required to redeliver the goods to his bailor even in the face of an asserted valid claim to the goods by a third party. This doctrine has, however, been repudiated and it is now the uniform rule that the bailee is relieved from all liability to the bailor, if he proves that, without collusion for the purpose of obtaining an advantage to himself, he has delivered the goods to a third-party claimant, and that such third party is indeed the one rightfully entitled to them." (Brown, The Law of Personal Property (3d ed. 1975) § 11.7, p. 285, fn. omitted.) "Upon notice of such adverse claim by the third party, the legality of this claim must be determined by the bailee on his own responsibility. He cannot disregard the claim, and if he does, and redelivers to the bailor, the bailee is responsible to the adverse claimant if his claim proves a just one." (Dobie, Handbook on the Law of Bailments and Carriers (1914) § 19, p. 42, fn. omitted; Brown, *op. cit. supra,* § 11.7, p. 285; see also *Powell* v. *Robinson & Ledyard* (1884) 76 Ala. 423, 425.)

"[A] bailee of property is bound to return it to his bailor, under pain of an action of conversion at the hands of the latter if he delivers the property to any other person, unless he believes after the exercise of reasonable care and vigilance that such other person has a claim to the possession of the property superior to that of the bailor [citation]." (*Lambert* v. *Valentine* (1923) 61 Cal.App. 712, 714 [215 P. 692]; see also *Hentz* v. *The Idaho* (1876) 93 U.S. 575 [23 L.Ed. 978].) "The law does recognize the dilemma of one in possession as a bailee or similar holder upon demand by a third party for the goods. Such holder does not become a converter by making a qualified

---

[5] The redemption of the lien was tied to a return of the property. As we shall explain, Fulwider was entitled to retain the property for a reasonable time to allow him to investigate Messerall's claim. The lien was not extinguished upon Messerall's initial tender, which Fulwider was not obligated to accept, but only after a period of time had passed sufficient to allow Fulwider to investigate.

refusal to surrender if his real and stated purpose is to secure a reasonable opportunity to inquire into the claimant's right [citation]." (*Giacomelos* v. *Bank of America* (1965) 237 Cal.App.2d 99, 100-101 [46 Cal.Rptr. 612]; see also Rest.2d Torts, § 240, pp. 469-471.)

The bailee may require a third party claimant to provide proof of his claim. (Brown, *op. cit. supra,* § 11.7, p. 285.) ▆▆ In this case, Messerall provided reasonably compelling proof by submitting to Fulwider the registration certificate in his name, a statement executed under penalty of perjury asserting his right to immediate possession, and a copy of the security agreement upon which that right was founded. When this evidence was furnished, the burden fell upon Fulwider to investigate the validity of the claim. (*Ibid.*)

In *Lambert* v. *Valentine, supra,* 61 Cal.App. 712, the court reviewed the evidence in a light most favorable to the appellants who had sought to gain possession of a bailed truck. That evidence showed "that at the time demand was made for the possession of the truck [the bailee was] notified of the fact that appellants were the owners of the legal title to it, *but that [the bailor] was in lawful possession of it* 'under a lease or otherwise.' " (*Id.,* at p. 714, italics added.) Thus, the party seeking possession acknowledged that the bailor had the right to possess the bailed property. Unlike the instant case, there was no reasonably compelling proof presented to the bailee showing the third party's right to possession; consequently the bailee had no duty to seek further information from the bailor. (*Ibid.*)

One obvious and reasonable method available to Fulwider would have been simply to contact Scott to attempt to verify Messerall's claim. Had Scott consented to a release of the property to Messerall, Fulwider could have released the property without liability to Scott. However, Fulwider did not make a qualified refusal to deliver the property during a period in which he could investigate Messerall's claimed right. Rather, he undertook no investigation at all.[6] Fulwider simply refused to surrender possession to Messerall, even upon tender of his claimed charges, unless Messerall procured a court order establishing his right to possession. Fulwider's insistence on a court order in the absence of any investigation constituted an

---

[6] In a petition for rehearing, Fulwider argues he was wrongfully assigned the "burden of proof" on this issue. We do not reach the contention. The trial court expressly found: "The evidence here shows no exercise of care and vigilance by Fulwider to determine whether Messerall or Scott had a superior claim to possession. [Citation.] There was no evidence that Fulwider made a qualified refusal to surrender possession with the real and stated purpose of securing a reasonable opportunity to inquire into the claimant's right. [Citation.] The only evidence is that Fulwider insisted on a court order . . . ." Fulwider never asserted in the trial court, nor in this court prior to his request for rehearing, that he had wrongfully been assigned the "burden of proof." He has therefore waived the contention. (*County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 513 [138 Cal.Rptr. 472, 564 P.2d 14].)

unjustified refusal to deliver possession. His refusal to investigate made litigation inevitable, whereas a reasonable investigation may have averted it. Fulwider was properly held liable for conversion.

If Fulwider wished to avoid the result which now has befallen him, he should have tried to get Scott's consent to a release of the property. Having failed to obtain that within a reasonable time, he should have filed an interpleader action. (Code Civ. Proc., § 386, subd. (b).)[7] In such an action, costs and attorney's fees may be awarded in the discretion of the court (Code Civ. Proc., § 386.6), and ordinarily should be awarded to a diligent bailee. While the initiation of such an action may place some burden on the bailee, we think that it is an inevitable cost of being in the business of bailments.

■ Fulwider argues he is entitled to attorney's fees on his cross-complaint in interpleader. However, as noted, such fees are discretionary with the trial court. (Code Civ. Proc., § 386.6, subd. (a).) Fulwider has made no showing whatsoever that the trial court abused its discretion by denying him such fees; considering the fact that he wrongfully forced Messerall to take legal action against him, the denial of fees was proper.

■ Fulwider insists he should get a judgment lien for his storage fees. (Code Civ. Proc., § 697.010.) However, Fulwider neither was entitled to nor received judgment; consequently, he is not entitled to a judgment lien.

The merit of Fulwider's contention that the trial court erred by denying his motion to vacate the judgment is tied to the success of his other contentions on appeal. The other arguments being unavailing, this last one fails as well.

## DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Deegan, J.,* concurred.

A petition for a rehearing was denied April 26, 1988, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 29, 1988.

---

[7] That subdivision provides in pertinent part that "Any person, firm, corporation, association or other entity against whom double or multiple claims are made, or may be made, by two or more persons which are such that they may give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims."

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.